IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION

| | | |
|---|---|---|
| EMEND HEALTH CORPORATION<br>*Plaintiff,*<br><br>vs.<br><br>SHELTON ROBINSON PROPERTIES LLC and WALKER LAND COMPANY VI, LLC<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 0:26-cv-00088-DLB-EBA |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, Emend Health Corporation ("Plaintiff") files this Original Complaint against Shelton Robinson Properties LLC and Walker Land Company VI, LLC (together, "Defendants"), and alleges as follows:

## I. PARTIES:

1. Plaintiff Emend Health Corporation is a corporation incorporated in California with its principal place of business located at 1910 Orange Tree Lane, Suite 300, Redlands, California 92374.

2. Defendant Shelton Robinson Properties LLC is a Kentucky limited liability company with its principal place of business located at 16386 US-23 Louisa, Lawrence County, Kentucky 41230. Shelton Robinson Properties LLC may be served with process by serving its registered agent at the following address: Jessica A. Burke, 860 Geoghegan Road, Shelbyville, Kentucky 40065-8041.

3. Defendant Walker Land Company VI, LLC, is a Kentucky limited liability company with its principal place of business located at 200 Apperson Heights, Suite 200, Mount Sterling, Montgomery County, Kentucky 40353. Walker Land Company VI, LLC may be served

with process by serving its registered agent at the following address: Arthur Everett Walker, 200 Apperson Heights, Ste. 200, Mount Sterling, Kentucky 40353.

## II. JURISDICTION AND VENUE:

### A. Subject Matter Jurisdiction:

4. The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). Complete diversity of citizenship exists between Plaintiff and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5. Plaintiff is a corporation incorporated in California with its principal place of business in California, and is therefore a citizen of California. *See* 28 U.S.C. § 1332(c)(1).

6. Defendant Shelton Robinson Properties LLC is a limited liability company. For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of each member of the entity. *Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237-38 (10th Cir. 2015). According to the Kentucky Secretary of State records, Shelton Robinson Properties LLC has one member, which is Addiction Recovery Care LLC. According to the Kentucky Secretary of State records, Addiction Recovery Care LLC has two members, who are Timothy G. Robinson and Lelia D. Robinson. A person is deemed to be a citizen of the state where the person is domiciled—that is, where the person has established a fixed habitation or abode, intending to remain there permanently or indefinitely. *Freidrich v. Davis*, 767 F.3d 374, 377 (3d Cir. 2014). On information and belief, Timothy G. Robinson and Lelia D. Robinson are domiciled in Kentucky and are therefore citizens of Kentucky. Therefore, Defendant Shelton Robinson Properties LLC is a citizen of Kentucky.

7. According to the Kentucky Secretary of State records, Defendant Walker Land Company VI, LLC is a limited liability company with one member, Arthur Walker. On

information and belief, Arthur Walker is domiciled in Kentucky and is therefore a citizen of Kentucky. Therefore, Defendant Walker Land Company VI, LLC is a citizen of Kentucky.

8. The amount in controversy in this action exceeds $75,000.00, exclusive of interest and costs. Only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" is necessary to establish the amount-in-controversy requirement for diversity jurisdiction. *McElroy v. Cordish Companies, Inc.*, No. 3:15-CV-390-DJH, 2016 WL 1069684, at *3 (W.D. Ky. Mar. 16, 2016) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)); *see also Mem'l Hall Museum, Inc. v. Cunningham*, 455 F. Supp. 3d 347, 354 (W.D. Ky. 2020) ("In diversity cases, the general rule is that the amount claimed by a plaintiff in his complaint determines the amount in controversy, unless it appears to a legal certainty that the claim is for less than the jurisdictional amount.").

9. When a plaintiff seeks non-monetary relief, such as a declaratory judgment, federal courts look to "the value of the object of the litigation." *Stryker Employment Co., LLC v. Abbas*, 60 F.4th 372, 381 (6th Cir. 2023). Considering the amount in controversy from the point of view of the party seeking to invoke diversity jurisdiction—in this case Plaintiff—is an accepted method of assessing the value of the object of the declaratory judgment action. *See Cunningham*, 455 F. Supp. 3d at 354.

10. Plaintiff and Defendant Shelton Robinson Properties LLC entered into a Membership Interest Purchase Agreement dated January 27, 2026 (the "<u>Purchase Agreement</u>") under which on January 27, 2026 Plaintiff acquired 50% of the membership interests (the "<u>Membership Interests</u>") of Bellefonte Properties LLC, a Kentucky limited liability company ("<u>Bellefonte</u>"), for a purchase price that exceeds $75,000.[1] The purchase price exceeded $1

---

[1] Due to the confidentiality clause in Section 17.02 of the Purchase Agreement, the Purchase Agreement is not attached as an exhibit to this Original Complaint.

million, but is not specifically stated herein due to the confidentiality provision in the Purchase Agreement.

11. Plaintiff and Defendant Walker Land Company VI, LLC entered into the Amended and Restated Operating Agreement of Bellefonte Properties, LLC dated effective January 27, 2026 (the "Bellefonte Amended Operating Agreement"), which recognized Plaintiff's purchase of the Membership Interests.[2]

12. In this case, the object of Plaintiff's declaratory judgment action is the Membership Interests in Bellefonte. To establish the value of property that is the object of non-monetary relief, federal courts have used either the contract price or the fair market value of the property as the amount in controversy.[3]

13. The purchase price under the Purchase Agreement paid by Plaintiff on January 27, 2026 to purchase 50% of the membership interests of Bellefonte was over $1 million in cash, plus a promissory note for additional consideration. Therefore, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

**B. Personal Jurisdiction:**

---

[2] The Bellefonte Amended Operating Agreement is attached to this Original Complaint as Exhibit A.

[3] *See Cunningham*, 455 F. Supp. 3d at 354-55 (holding that evidence of the fair market value of historical personal property that the plaintiff sought to recover established the amount in controversy); *Beasley v. Wells Fargo Bank, N.A. for Certificate Holders of Park Place Sec., Inc.*, 744 Fed. Appx. 906, 913 (6th Cir. 2018) (holding that, regardless of whether contract price or fair market value of property subject to specific-performance action is used, either satisfies the amount in controversy requirement); *Infinity Real Estate, LLC v. Deutsche Bank Nat'l Tr. Co. for RBSGC 2007-B*, 2:18-CV-00038-JAW, 2018 WL 4204642, at *3 (D. Me. Sept. 4, 2018) (using estimated fair market value of the property to establish amount in controversy); *Neuman v. Levan*, CIV.A.8:08-03418HFF, 2009 WL 1856580, at *3 (D.S.C. June 25, 2009) ("The Court finds that Plaintiffs satisfied the amount-in-controversy requirement by seeking the remedy of specific performance and specifying that the contract called for the sale of land for $508,000."); *Medallion Homes Gulf Coast, Inc. v. Gevorgyan,* No. 8:07–cv–246–T–23TBM, 2007 WL 947895, at *1 (M.D. Fla. Mar.27, 2007) (using the contract price to satisfy the amount-in-controversy requirement when a plaintiff sought specific performance of a contract but "failed to claim a specific amount of money damages"); *Comprehensive Addiction Programs v. Mendoza,* 50 F.Supp.2d 581, 582–83 (E.D. La. 1999) (using the contract price to satisfy the amount-in-controversy requirement in a breach of contract action where the plaintiff sought specific performance and extra contractual damages).

14. The Court has personal jurisdiction over Defendants because Defendants are Kentucky limited liability companies that have done business in Kentucky at all relevant times.

15. Further, in Section 18.08 of the Purchase Agreement, Shelton Robinson Properties LLC expressly consented to the exercise of personal jurisdiction by the federal courts located in Kentucky.

**C. Venue:**

16. Venue is proper in this district under 28 U.S.C. §1391(b)(1) because Defendants are residents of both Kentucky and of this district.

17. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2). This action has been filed in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and in which a substantial part of property that is the subject of the action is situated.

## III. FACTUAL BACKGROUND:

**A. Summary:**

18. This lawsuit results from Defendants' purported repudiation of Plaintiff's rights and status as the owner of fifty percent (50%) of the membership interest in Bellefonte that Plaintiff acquired on January 27, 2026 pursuant to the Purchase Agreement.

19. Plaintiff purchased the Membership Interests in Bellefonte on January 27, 2026 pursuant to the Purchase Agreement entered into between Shelton Robinson Properties LLC ("Shelton"), as Seller, and Plaintiff, as Purchaser.

20. Following the Closing[4] of the Purchase Agreement on January 27, 2026, Plaintiff and Walker Land Company VI, LLC ("Walker Land Company") each owned a 50% membership

---

[4] Capitalized terms that are not defined herein have the meaning assigned to them in the Membership Interest Purchase Agreement. The term "Closing" is defined in Section 4.01 of the Membership Interest Purchase Agreement.

interest in Bellefonte. In connection with the Closing of the Purchase Agreement, Plaintiff and Walker Land Company entered into the Bellefonte Amended Operating Agreement.

21. By letter dated May 21, 2026, Shelton attempted to terminate the Purchase Agreement based on its false allegations that the Closing never occurred. In fact, Closing of the Purchase Agreement occurred on January 27, 2026. On that date, (a) Plaintiff and Shelton executed the Purchase Agreement; (b) Plaintiff executed and delivered to Shelton the Promissory Note dated January 27, 2026, made payable to the order of Shelton, for part of the purchase price (the "Promissory Note"); and (c) Plaintiff paid the other part of the purchase price to Shelton via cash. Because Closing of the Purchase Agreement occurred, Shelton has no legal right to terminate the Purchase Agreement.

22. After Shelton's attempted wrongful termination of the Purchase Agreement, Walker Land Company refused to honor Plaintiff's ownership interest in Bellefonte and repudiated Plaintiff's contractual rights under the Bellefonte Amended Operating Agreement.

23. Plaintiff asks that the Court (a) enter a declaratory judgment that on January 27, 2026 Plaintiff acquired from Shelton 50% of Bellefonte Membership Interests pursuant to the Purchase Agreement; (b) enter a declaratory judgment that the Purchase Agreement between Shelton and Plaintiff is a valid, binding and enforceable contract; (c) enter a declaratory judgment that Shelton does not have any right to terminate, rescind, or unwind the Purchase Agreement; (d) enter a declaratory judgment that the Bellefonte Amended Operating Agreement is a valid, binding and enforceable contract between Walker Land Company and Plaintiff; (e) enter a declaratory judgment that Plaintiff is a member of Bellefonte, and possesses all the rights and obligations of a member of Bellefonte under the Bellefonte Amended Operating Agreement; (f) enter a declaratory judgment that Plaintiff owns fifty percent (50%) of the Membership Interests of Bellefonte; and

(g) award Plaintiff its reasonable attorneys' fees and costs as provided in Section 18.11(c) of the Purchase Agreement.

**B. Shelton and Plaintiff negotiate the sale to Plaintiff of Shelton's membership interest in Bellefonte.**

24. During January 2026, Plaintiff and Shelton's controlling principal, Tim Robinson, began discussing the sale of Shelton's membership interest in Bellefonte.

25. At that time, Bellefonte had two members: Shelton and Walker Land Company. Each member owned fifty percent (50%) of the membership interests of Bellefonte.

26. Tim Robinson controls Shelton though his ownership interest in, and his position as Chief Executive Officer of, Shelton's sole member, which is Addiction Recovery Care LLC, a Kentucky limited liability company ("ARC").

27. Robinson is also the Chief Executive Officer of Pioneer Health Group, LLC and Science Hill Family Care, LLC, affiliates of ARC.

28. Walker Land Company's sole member is Arthur Walker. Walker is a close associate of Robinson.

29. Robinson told Plaintiff that he wanted to sell Shelton's membership interest in Bellefonte in order to be able to fund obligations of ARC.

**C. The Closing of the Purchase Agreement occurs on January 27, 2026.**

30. Plaintiff purchased Shelton's membership interest in Bellefonte pursuant to the terms of the Purchase Agreement. The Purchase Agreement was a "sign and close" transaction. The Closing, as that term is defined in Section 4.01 of the Purchase Agreement, occurred on January 27, 2026. All of the contractual conditions precedent and requirements to Closing were performed:

(a) Each of the parties to the Purchase Agreement—Shelton and Plaintiff—signed the Purchase Agreement and exchanged the signed signature pages;

(b) Plaintiff executed and delivered to Shelton the Promissory Note; and

(c) Plaintiff paid the cash portion of the purchase price to Shelton, which Shelton has acknowledged.

31. After the Closing, and in accordance with Section 11.03(b) of the Purchase Agreement, Plaintiff pursued multiple mortgage refinancing opportunities that would remove the personal guarantees of Tim Robinson and Leila Robinson related to mortgage indebtedness of Bellefonte, thereby fulfilling its obligation under the Purchase Agreement. Shelton participated in these activities.

32. As of the Closing, and in accordance with the terms of the Purchase Agreement, Plaintiff owns fifty percent (50%) of the Bellefonte Membership Interests.

**D. Effective on January 27, 2026, Plaintiff and Walker Land Company enter into the Bellefonte Amended Operating Agreement.**

33. In connection with the sale to Plaintiff of fifty percent (50%) of the Bellefonte Membership Interests, and effective as of the Closing Date, Plaintiff and Walker Land Company entered into the Bellefonte Amended Operating Agreement.

34. The Bellefonte Amended Operating Agreement expressly recognized and confirmed that Plaintiff owns fifty percent (50%) of the Bellefonte Membership Interests. It also established the rights and obligations of Bellefonte's two members—Plaintiff and Walker Land Company.

35. Thereafter, and continuing until May 2026, Plaintiff and Walker Land Company performed certain obligations as the members of Bellefonte, and in accordance with the Bellefonte Amended Operating Agreement. In particular, Plaintiff made certain capital contributions to Bellefonte, which Walker Land Company accepted. Plaintiff also paid its share of the operating expenses for Bellefonte and began searching for leases for the building owned by Bellefonte. Walker Land Company provided Plaintiff with extensive Bellefonte financial, insurance and other

information and held detailed discussions regarding how to handle the renewal of Bellefonte's insurance policies. For instance, Walker Land Company arranged for and provided instructions to Bellefonte's bank to allow Plaintiff to have access to the operating account. Walker Land Company also instructed Bellefonte's accountant to provide Plaintiff with access to Bellefonte's accounting records.

**E. Shelton attempts to terminate the Purchase Agreement with the intent to use Bellefonte's property to pay a settlement of [redacted].**

36. In or about May 2025, the [redacted].

37. By letter dated May 21, 2026—over three months after the Closing of the Purchase Agreement—Shelton claimed that the Closing of the Purchase Agreement never occurred. Specifically, Shelton falsely alleged that Shelton never received the Promissory Note or other unspecified items referenced in Section 6.03 of the Purchase Agreement.

38. In the same letter dated May 21, 2026, Shelton conceded that it no longer owned Bellefonte Membership Interests after the Closing of the Purchase Agreement and proposed that Plaintiff agree to "unwind the Purchase Agreement" in order to give Shelton ownership rights in Bellefonte's property and thereby the ability to include Bellefonte's property in [redacted]

39. Shelton's allegation that Closing of the Purchase Agreement did not occur is false. Plaintiff delivered the executed Promissory Note to Shelton on January 27, 2026 (the Closing Date) via email to Shelton's legal counsel, Jessica Burke, and Tim Robinson. Indeed, on March 5, 2026—over a month after Closing—Tim Robinson, who claimed that he was again unable to pay

ARC payroll obligations for one of his companies, requested that Plaintiff make an early payment under the Promissory Note, thereby conceding that Shelton had in fact received the executed Promissory Note.

40. Shelton further claims that it did not receive enumerated items in Section 6.03 of the Purchase Agreement. The terms of the Purchase Agreement and the conduct of Shelton's principal waived all objections to the closing of the sale of the Bellefonte Membership Interests. First, even if Shelton had not received certain of those enumerated items, Section 18.02(c) of the Purchase Agreement states that upon Closing, any breaches or conditions not previously waived are "deemed waived." Second, Shelton's actions in proceeding with the Closing (and using the purchase price paid under the Purchase Agreement for the benefit of his companies) waived any objection to the failure to receive those items.

41. Finally, Shelton has confirmed that the Closing of the Purchase Agreement occurred. On May 26, 2026, Shelton's counsel sent Plaintiff a letter from [redacted].

42. In sum, it is undisputed that the Closing of the Purchase Agreement occurred on January 27, 2026 and that Plaintiff now owns 50% of the Bellefonte Membership Interests. As a result, Shelton has no legal right to terminate the Purchase Agreement.

**F. Walker Land Company repudiates the Bellefonte Amended Operating Agreement and disputes Plaintiff's membership interest in Bellefonte.**

43. In May 2026, shortly after Shelton attempted to terminate the Purchase Agreement, Walker Land Company suddenly falsely claimed that Plaintiff is not a member of Bellefonte and

purported to repudiate Plaintiff's membership status and rights under the Bellefonte Amended Operating Agreement.

44. This sudden reversal of position by Walker Land Company is not surprising, as Walker Land Company's owner, Arthur Walker, is a close associate of Shelton's controlling principal, Tim Robinson.

45. But Walker's close relationship with Robinson also reveals that Walker's challenge is baseless and contrived by Robinson as an attempt to pressure Plaintiff into forfeiting its Bellefonte Membership Interests. Walker Land Company executed the Bellefonte Amended Operating Agreement. Prior to May 2026, Walker Land Company accepted Plaintiff's capital contributions to Bellefonte, acknowledged Plaintiff's status as a Bellefonte Member and provided Plaintiff with a wide range of Bellefonte business records. Walker Land Company requested that Plaintiff pay, and accepted Plaintiff's payment of, certain operating expenses of Bellefonte. Walker Land Company has no basis for—and no legal right to—dispute Plaintiff's status as a member of Bellefonte and ownership of fifty percent (50%) of the Bellefonte Membership Interests.

## IV. CAUSES OF ACTION:

### A. Count 1—Declaratory Judgments regarding the Purchase Agreement:

46. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

47. There is a present and existing actual controversy between Plaintiff and Shelton concerning the validity and enforceability of the Purchase Agreement and concerning the parties' rights and obligations under the Purchase Agreement, including whether Closing of the Purchase Agreement has occurred and whether Shelton has the right to terminate the Purchase Agreement.

48. Accordingly, this is a claim for declaratory judgment by Plaintiff under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining the validity and enforceability of the Purchase Agreement and the parties' rights and obligations under the Purchase Agreement.

49. Plaintiff seeks declaratory judgments that (a) the Closing of the Purchase Agreement occurred on January 27, 2026; (b) the Purchase Agreement is a valid, binding, and enforceable contract between Shelton and Plaintiff; (c) Shelton does not have any right to terminate, rescind, or unwind the Purchase Agreement; and (d) Plaintiff owns fifty percent (50%) of the Bellefonte Membership Interests.

50. Under Section 18.11(c) of the Purchase Agreement, Plaintiff seeks to recover from Shelton its reasonable attorneys' fees and costs incurred to prosecute this declaratory judgment action.

**B. Count 2—Declaratory Judgments regarding the Bellefonte Amended Operating Agreement:**

51. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

52. There is a present and existing actual controversy between Plaintiff and Walker Land Company concerning the validity and enforceability of the Bellefonte Amended Operating Agreement and Plaintiff's status as a Bellefonte member and Plaintiff's rights under the Bellefonte Amended Operating Agreement.

53. Accordingly, this is a claim for declaratory judgment by Plaintiff under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining the validity and enforceability of the Bellefonte Amended Operating Agreement and Plaintiff's status and rights under the Bellefonte Amended Operating Agreement.

54. Plaintiff seeks declaratory judgments that (a) the Bellefonte Amended Operating Agreement is a valid, binding and enforceable contract between Plaintiff and Walker Land Company; and (b) Plaintiff is a member of Bellefonte, and possesses all the rights and obligations of a member of Bellefonte, under the Bellefonte Amended Operating Agreement.

55. Under Section 18.11(c) of the Purchase Agreement, Plaintiff seeks to recover from Shelton its reasonable attorneys' fees and costs incurred to prosecute this declaratory judgment action.

**C. Count 3—Declaratory Judgment regarding Plaintiff's membership interest in Bellefonte:**

56. Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs.

57. There is a present and existing actual controversy between Plaintiff and Defendants concerning whether Plaintiff owns fifty percent (50%) of the Bellefonte Membership Interests.

58. Accordingly, this is a claim for declaratory judgment by Plaintiff under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining whether Plaintiff owns fifty percent (50%) of the Bellefonte Membership Interests.

59. Plaintiff seeks a declaratory judgment that Plaintiff owns fifty percent (50%) of the Bellefonte Membership Interests.

60. Under Section 18.11(c) of the Purchase Agreement, Plaintiff seeks to recover from Shelton its reasonable attorneys' fees and costs incurred to prosecute this declaratory judgment action.

## V. CONDITIONS PRECEDENT:

61. All conditions precedent to Plaintiff's right to recover the relief sought herein and to Defendants' liability have been performed, have been waived, or have occurred.

## VI. PRAYER:

Plaintiff prays that Defendants be cited to appear and respectfully requests that the Court:

a) enter the declaratory judgments that Plaintiff seeks as described above;

b) enter a judgment against Shelton awarding Plaintiff its reasonable attorneys' fees and costs as the Purchase Agreement provides; and

c) award all other and further relief, both at law and in equity, to which Plaintiff shows itself justly entitled.

Respectfully submitted,

HOLLAND & KNIGHT LLP


By *_/s/ Connor Cafferty_*

Connor Cafferty
Kentucky Bar No. 99008

Connor.Cafferty@hklaw.com

150 Third Avenue South, Suite 2800
Nashville, TN 37201
615.244.6380

COUNSEL FOR PLAINTIFF